#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | NO. 02-813-02 |
| | : | |
| **RONALD MAPP** | : | |

#### MEMORANDUM OPINION

**Savage, J.**                                                                                                          **August 10, 2021**

Moving for a reduction of sentence under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), Ronald Mapp, a prisoner at USP Canaan, contends that his hypertension and obesity in light of the COVID-19 pandemic constitute extraordinary and compelling reasons warranting a reduction of his sentence.[1] Mapp claims that he is not a danger to the community and is unlikely to recidivate, citing his voluntary participation in various educational programs as evidence of his rehabilitation.[2] Although the government concedes that Mapp presents two serious medical conditions placing him at greater risk for severe illness or death from COVID-19, it argues that the pandemic and his compromised health do not support a reduction in sentence because he is vaccinated.[3] The government also argues that Mapp poses a danger to the community due to the nature and severity of his offenses, and his disciplinary record while incarcerated.[4]

Mapp pled guilty to twelve counts of Hobbs Act robbery, two counts of carrying and using a firearm during a crime of violence under Section 924(c) and one count of

---

[1] Def.'s Mot. for Comp. Release at 14-17 (ECF No. 249).

[2] *Id.* at 16-17, 22-23.

[3] Govt. Resp. in Opp. to Def.'s Mot. to Red. Sent. at 12 (ECF No. 252); Govt. Supp. Resp. at 1 (ECF No. 260).

[4] Govt. Resp. at 16-17.

1

conspiracy to interfere with interstate commerce by robbery.[5] He was also convicted of murder and related charges in the Lehigh County Court of Common Pleas for a killing that occurred during one of the robberies.[6] He had one prior juvenile adjudication for burglary.[7] His total offense level was 34 and his criminal history category was I. His guideline range was 571 to 608 months. He was sentenced to a mandatory 300 months consecutive to 24 days.

Mapp is 46 years old.[8] He suffers from hypertension and obesity.[9] He tested positive for COVID-19 on January 24, 2021, and has since recovered.[10] He has not suffered any residual consequences from his infection.[11] He received his first dose of the Pfizer vaccine on March 31, 2021.[12]

Because Mapp has recovered from COVID-19 and has received at least one dose of the vaccine, we find that the circumstances of the COVID-19 pandemic together with his health conditions do not constitute an extraordinary and compelling reason warranting release. Therefore, we shall deny his motion for a sentence reduction under the compassionate release statute.

---

[5] *Id*. at 1-2.

[6] *Id*. at 2.

[7] *Id*. at 3.

[8] *See* Bureau of Prisons Health Services Records at 1 (ECF No. 253).

[9] *Id*. at 2-3, 9-10, 19, 53.

[10] *Id*. at 36, 45, 53, 56; Govt. Supp. Resp. at 1.

[11] Govt. Supp. Resp. at 1.

[12] *Id*.

## Discussion

A court may reduce a defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a), if it first finds that extraordinary and compelling reasons warrant a reduction and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Before ordering the release of a prisoner, the court must determine that he is not a danger to the safety of others or the community. 18 U.S.C. § 3142(g).

Congress did not define what constitutes an extraordinary and compelling reason, leaving it to the Sentencing Commission to do so. In its policy statement and commentary addressing Section 3582(c)(1)(A), the Sentencing Commission set forth three specific extraordinary and compelling reasons. U.S.S.G. § 1B1.13, cmt. n. 1. Application Notes 1(A) through 1(C) detail qualifying medical, age and family circumstances. Pertinent to Mapp, Application Note 1(A) provides that a defendant may receive a sentence reduction if he is suffering from a terminal illness or a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the defendant's ability to provide self-care in prison and from which he is not expected to recover. U.S.S.G. § 1B1.13 cmt. n.1(A). It is undisputed that Mapp's conditions of hypertension and obesity do not satisfy the requirements of Application Note 1(A).

Making it clear that these were not the only reasons that may be considered extraordinary and compelling, the Sentencing Commission added an "other reasons" category that provides that a reduction may be warranted by an "extraordinary and compelling reason other than, or in combination with, the reasons described in

3

subdivisions (A) through (C)." U.S.S.G. § 1B1.13, cmt. n. 1(D). At the same time, it delegated the Bureau of Prisons ("BOP") Director to define what "other reasons" qualify under subdivision 1(D). *Id*.

We have held in other cases that a court has the authority and responsibility to determine what is an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).[13] We have also determined that the COVID-19 virus and its impact on the prison population in a particular case may warrant relief under Section 3582(c)(1)(A).[14] Thus, we consider Mapp's motion on the merits.

To determine whether extraordinary and compelling reasons exist in an individual case, we consider the circumstances of the COVID-19 pandemic, the defendant's health conditions, the defendant's age, the risk of contracting COVID-19 at the defendant's facility and whether the defendant has been vaccinated. None of these reasons alone is an extraordinary or compelling reason. Health complications without the risk of COVID-19 at a particular institution do not warrant release in every case. Similarly, the fact that a facility may have confirmed cases of COVID-19 does not justify release if the defendant is not at risk due to age or other medical conditions, or if the defendant is vaccinated. However, a combination of these circumstances may rise to the level of "extraordinary and compelling." Hence, each case must be determined by the facts unique to the defendant.

---

[13] *See U.S. v. Babbitt*, 496 F. Supp. 3d 903 (E.D. Pa. 2020); *U.S. v. Spencer*, No. 15-562, 2021 WL 565388 (E.D. Pa. Feb. 12, 2021); *U.S. v. Randall*, No. 08-8, 2021 WL 922077 (E.D. Pa. Mar. 11, 2021); *U.S. v. Avery*, No. 04-243, 2021 WL 949482 (E.D. Pa. Mar. 12, 2021); *U.S. v. Medina*, No. 15-554 (E.D. Pa. Apr. 22, 2021).

[14] *See Babbitt*, 496 F. Supp. 3d; *Spencer*, 2021 WL 565388; *Medina*, No. 15-554.

There are three vaccines against COVID-19, produced by Pfizer-BioNTech, Moderna and Johnson & Johnson, approved for emergency use in the United States.[15] Clinical trials of the Pfizer vaccine reported that it was up to 95% effective at preventing symptomatic COVID-19 across a number of variables, including age, gender, race, ethnicity, body mass index and other medical conditions.[16] In clinical trials, the vaccine was 100% effective in preventing severe disease.[17] Clinical trials for Moderna showed an efficacy rate of 94.1% against preventing symptomatic infection, although the rate dropped to 86.4% for people aged 65 and older.[18]

Both Pfizer and Moderna require two separate doses, several weeks apart, to be fully effective, though studies have suggested that both Pfizer and Moderna are 82% effective against symptomatic COVID-19 after the first dose.[19] The Johnson & Johnson vaccine only requires one dose and has been shown to have an 86% efficacy against severe illness and a 72% efficacy overall.[20] Serious side effects such as heart inflammation and blood clots have been reported in rare cases.[21]

---

[15] "COVID-19 Vaccines," U.S. Food & Drug Administration, https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/covid-19-vaccines.

[16] Katella, Kathy, "Comparing the COVID-19 Vaccines: How Are They Different?" Yale Medicine (July 22, 2021), https://www.yalemedicine.org/news/covid-19-vaccine-comparison.

[17] *Id*.

[18] *Id*.

[19] *Id*.; Pilishvili, Tamara, et al., "Interim Estimates of Vaccine Effectiveness of Pfizer-BioNTech and Moderna COVID-19 Vaccines Among Health Care Personnel — 33 U.S. Sites, January–March 2021," MMWR 70:753–758 (May 2021), http://dx.doi.org/10.15585/mmwr.mm7020e2.

[20] Katella, *supra* note 16.

[21] *Id*.

As of August 9, 2021, more than 4 billion vaccine doses have been administered worldwide.[22] Based on the current available data, the vaccines appear to be effective against the COVID-19 variants detected in different regions around the world.[23] A study by the National Institute of Health on the impact of the two-dose vaccines concluded that "[v]accination markedly reduced adverse outcomes," with hospitalizations decreasing by 63.5%, intensive care unit hospitalizations decreasing by 65.6% and deaths decreasing by 69.3%.[24]

Since the vaccines have become available, the BOP has administered over 208,000 doses to incarcerated individuals and staff.[25] As of May 2021, over half of the prisoners incarcerated in the federal and state systems are vaccinated.[26]

Mapp is at least partially vaccinated against COVID-19, having received the first dose of the Pfizer vaccine. The government contends that the second dose was scheduled to be administered several weeks after the first dose.[27] Mapp has not informed us that he did not receive the second dose. Even if Mapp only received the first dose, he is still sufficiently protected against symptomatic COVID-19. Although he suffers from

---

[22] "WHO Coronavirus Disease (COVID-19) Dashboard," World Health Organization, https://covid19.who.int/ (updated daily).

[23] Katella, *supra* note 16; "About Variants of the Virus that Causes COVID-19," Centers for Disease Control and Prevention (June 28, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html.

[24] Moghadas, Seyed M. et al., "The impact of vaccination on COVID-19 outbreaks in the United States," Clin. Infect. Dis. (Jan. 30, 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7929033/.

[25] Federal Bureau of Prisons, "COVID-19 Coronavirus" (updated daily), https://bit.ly/2SOsQpe.

[26] Herring, Tiana and Emily Widra, "Just over half of incarcerated people are vaccinated, despite being locked in COVID-19 epicenters," Prison Policy Initiative (May 18, 2021), https://www.prisonpolicy.org/blog/2021/05/18/vaccinationrates/.

[27] Govt. Supp. Resp. at 1.

several medical conditions associated with increased risk of severe illness or death from COVID-19, the risks posed to Mapp's health are minimal. He contracted the virus in January 2021 and fully recovered. Moreover, Mapp is housed at USP Canaan, which has no reported cases among inmates or staff.[28] Of the inmates at USP Canaan, 88% are fully vaccinated.[29] Therefore, these circumstances do not present an extraordinary or compelling reason justifying compassionate release.[30]

## Conclusion

The COVID-19 pandemic and the low risk of Mapp contracting COVID-19 at USP Canaan do not constitute extraordinary and compelling reasons to grant a sentence reduction. He is no longer at risk of severe illness or death while continuing to serve his sentence at USP Canaan. Therefore, we shall deny Mapp's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

---

[28] "COVID-19 Coronavirus," *supra* note 25.

[29] *Id*.; Federal Bureau of Prisons, "USP Canaan," https://www.bop.gov/locations/institutions/caa/.

[30] Our reasoning is consistent with that of numerous other courts in the Third Circuit that have denied compassionate release motions brought by vaccinated defendants. *See, e.g., United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit."); *United States v. Hannigan*, 2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22, 2021) ("Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release.") (citing cases); *United States v. Roper*, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("The risk posed to an inoculated Mr. Roper is not an extraordinary and compelling reason for his release."); *United States v. Jones*, 2021 WL 1561959, at *1 (E.D. Pa. Apr. 21, 2021) ("[A]s of now, the available data confirms the extreme effectiveness of the vaccines."); *United States v. Peterson*, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021) ("Given the significant protection the [Johnson and Johnson] vaccine offers and the declining rates of COVID-19 infections in prisons, we (like many other courts) do not find that Mr. Peterson has presented extraordinary and compelling circumstances at this time."); *United States v. Kamara*, 2021 WL 2137589 (E.D. Pa. May 26, 2021).
Because we conclude that there is no extraordinary or compelling reason to grant compassionate release, we do not reach the issue of whether Mapp is a danger to the safety of others or the community.